Submit it, and you may call the next case. Good morning, your honors. Morning. If I could reserve three minutes. Please, the court. Welcome to a different circuit, I guess, right? Yes. It's a beautiful courtroom, I must say. Richard Burles-Moyarty, Assistant Attorney General, Wisconsin Department of Justice, representing the defendants' appellants. This case involves one sovereign permanently enjoining another sovereign from proceeding in ways defined by that second sovereign's statutes in areas governed by several traditional state regulatory fields, labor relations, domestic relations, and health care. The written submissions, I think, identify multiple alternate routes to the same destination, which is reversing the judgment and remanding to enter judgment for the defendants. And before highlighting some of those routes, I'd suggest two overall options available to the court. The first is, if the court perceives a reasonably clear and principled way to reach that result, without reversing and requiring judgment for the defendants, then it's unnecessary to resolve other federal issues, some that are thorny in this case, and it would be unnecessary to certify the unsettled state law issue that's been identified. But if the court does not perceive a reasonably clear and principled way to reach that result, then I think the appropriate thing to do would be to certify this unsettled state law question, which is when, if at all, is STD leave available for substitution? When has it accrued and be available for substitution under this state law? I guess, I mean, that question, I suppose, illustrates why it seems to me it makes sense to start with the merits of the preemption issue rather than some of the ex parte young and remedial stuff that you've argued about. Because, I mean, if we did conclude that ERISA, to the extent that the Wisconsin Act requires nationwide to pay benefits when the plan itself does not provide for them, if we conclude that ERISA preempts to that extent, we would just say, you know, it doesn't matter too much to us what the right answer is to your statute, but this is a federal guardrail around the Wisconsin court's interpretation, and you just can't go past that, and then we don't have this back and forth. Well, that's a fair point, Your Honor, and I think it does all focus on what did Congress intend? Sure. Because what we have here is this action by a sovereign that's completely justified, solely justified by what did Congress intend in enacting ERISA and thereafter. That's what it all comes down to, and I think the unanimous Aurora decision by the Wisconsin Supreme Court lays out a pretty good roadmap for that analysis. It looked at the very same issues of preemption that have been looked at here, and as it correctly observed and as USDOL has conveyed in its amicus brief in Aurora, in its amicus brief below in this case, and through its opinion letter, Congress intended to encourage and foster these more generous state law provisions, and in the legislative history, this particular substitution of Wisconsin's was pointed to by the sponsors. Well, there's kind of a lot of hoops to get through before we sort of get down to some colloquy between Senator Dodd and somebody else. And just to sort of maybe narrow the scope of the dispute, would you agree that absent the applicability of a savings clause of some kind in this case, there is ERISA preemption? I think before the ‑‑ that, I think, comes down to this issue, Your Honor. Sure. Before the federal government enacted its law in 1983, people were looking at this. Administrative law judges were looking at it, and different results were being reached over whether there was ERISA preemption or not. To the extent this Wisconsin Act requires payment of benefits contrary to the plan, and there is no savings clause that applies, and I know you argue there is, would you agree it's preempted? I think that's fair, Your Honor. Let's put it this way, an argument can be made, but I think it's fair. Right, and I appreciate that, because then we can, I mean, it seems like there are three different ways, really. I mean, ERISA is pretty, it's like a third rail. It is. You touch it and game over. It's a third rail, but 1144D says, yep, that third rail is here. But when Congress intends to have a structure in its statute, then, and ERISA would impair that structure. ERISA preemption does not apply. So it says that third rail is off limits. And isn't that kind of touched on in the D.C. Oakley case? It is. In which the D.C. says, all right, let's look at the statute itself of ERISA. We've got the superseding clause, but we have an equal and equally expansive impairment clause. And I presume that's the argument, that's the principled method of resolving this to which you referenced? It is. Walk me through that. All right. Because I think there's two methods. One goes to the FMLA savings clause itself. You need that, don't you? We don't need it. The second is the 1144D issue, which is served, the impairment issue is served and met strictly by looking at what was Congress doing overall. I thought your argument was you need the interlock between 1144D and the savings provision in the FMLA. Am I mistaken in that? I don't know that you're mistaken as much as I don't think I expressed it well in the briefs. I just want to make sure I understand your argument. When I reread my briefs, I recognized. We all do that when we go back a month later. So clearly you're not playing the old double deal. There's this one protects and then the other one protects and now we're done. That's not the argument that you're making, correct? You can reach this result through strictly looking at 1144D, the non-impairment issue, Shaw, Dillingham, Travelers, that whole set of things. I'm sorry. I apologize. When Congress expresses an intent, and that can be gleaned from a lot of different things. Usually the words of the statute that the President signed. The statute. In Dillingham, they looked at legislative history. Well, isn't Shaw the key case? Doesn't Shaw tell us that we've got to go find legislative intent? Correct. So we've got the two arms. We've got what the statute wrote and what Congress said about it. Exactly. And in Shaw, they were looking at Title VII, which had a very broad, you know, any non-conflicting state law, we don't intend to mess with it. That's all they were doing in Shaw. In Dillingham, like here, they had legislative intent expressed in history and otherwise to foster or encourage other state laws. That's what we've got here. Excuse me. Can you indulge me on a textual analysis? I mean, I'm not looking to start an interpretive, you know, debate here. I mean, the court has told us a thousand times over that we start with the words that each chamber enacted and that the President signed. And it's only if we have ambiguity there that we go off to, you know, the colloquies and that sort of thing. Which colloquies, by the way, even if we get there, I think are the lowest form of legislative history of life. I mean, a committee report is usually taken more seriously than that. We have the report colloquies. But so, I mean, if we're looking at the words of some statute, what words would we point to to say that, yes, 1144D applies because preemption of this Wisconsin statute, when it requires payments contrary to the plan, would impair those words? We have 2651 in the federal family and medical leave law. We have 2651B. And that's their savings clause. That's their savings clause. And then we have 2652B. Real quick on 2651, four times it limits the scope of this to this act. Correct. I mean, what's ambiguous about this act? This act is here, but what do they mean when they say that? Nothing's going to supersede. And then when we look at 2652B and we see something of what they're saying with this act, it includes in our scope, in our structure, we want to encourage and foster these more generous laws. Why? What does 2652B say again? I'm sorry. It says the rights established for employees under this act or any amendment made to this act shall not be diminished by any collective bargaining agreement or any employment program or plan. A clear reference to ERISA. And what were they trying to do with this act? They were trying to create a structure, as USDOL said in its Aurora brief, where, yeah, we've got our floor, our federal floor, but we don't want that to be a ceiling. We want states to experiment. We want to study what they're doing. We want to come back with a commission on leave and maybe change things later. But what you read says a plan shall not take the rights below the floor. And the plan is not diminishing any rights established for employees under the FMLA. I mean, it's consistent with it. But I don't want to hog your time. I appreciate that they can be read that way. I would say Aurora read these same provisions and saw plain language that Congress intended to protect these things. So we have a unanimous court reading these, and I think that could create an ambiguity on its own. Okay. Thank you. Thank you, sir. Counsel, you have your rebuttal. Good morning. May it please the Court, I'm Daniel Sirsik, and I'm here today representing the appellees. I'm here today to argue that the district court properly applied the principles of ERISA preemption in granting declaratory and injunctive relief and also in granting fiduciary instructions to the plan administrator in this case. This case involves the appellant's application of Wisconsin law to require the payment of ERISA short-term disability benefits in a manner that conflicted with plan documents and, as a result, conflicted with federal law. The fiduciaries that operate and administer this short-term disability benefit are required by federal law, by ERISA, to administer those benefits and pay benefits in accordance with the written plan documents, and that is what they meant to do. Unfortunately, what happened with the application of this Wisconsin statute, the substitution provision of the Wisconsin Family and Medical Leave Act, the WFMLA, is these short-term disability benefits were identified as a form of accrued paid leave under the state statute that could be substituted so that associates of employees nationwide who work in the state of Wisconsin could take an otherwise unpaid WFMLA leave and require that the employee benefit plan pay short-term disability benefits, despite the fact that the employees were not disabled, didn't meet the conditions for eligibility under the terms of the plan. The WFMLA is, you would agree, an area in which the state has traditionally legislated employee benefits? I would say that employee benefits has been, since the early 70s, at least been an area that the federal government has occupied almost exclusively. With the passage of ERISA, employee benefits is almost exclusively an area of federal concern. Now, there are other areas. But the state regulates a number of things in employees, from wages to taxes to benefits, do they not? They do, certainly. And that's what the WFMLA is, correct? The WFMLA is a statute that provides certain leave rights to employees, and there are certainly state interests in managing leave rights. Certainly. And I guess where I'm struggling is I'm looking at Dillingham and just a whole tradition of federal law that, you know, that time and again says that congressional intent must be clear and manifest to hold preemption in these areas in which the state normally operates. Where do you find that clear and manifest purpose that Congress intended ERISA to preempt substantive state leave laws like the WFMLA? I think there are two approaches that need to be taken to the question of preemption in this case. The first one is conflict preemption, which I think is separate and apart from your question. And the other is the express preemption of ERISA's preemption provision 1144. And I believe that just the plain text of ERISA's preemption provision, the federal law of ERISA preempts any and all state laws insofar as they may now or hereafter relate to any employee benefit plan expresses Congress's clear intent to preempt laws like this that impact on employee benefits. And the way that has been interpreted over the years, there are two separate areas, I guess, that I would encourage you to focus on when looking at the express preemption provision. One are the effects of the state statute on a central matter of plan administration. In the Supreme Court's Egelhoff decision, they looked at a requirement under a Washington state statute that would have required a payment of employee benefits under certain circumstances. And what the Supreme Court found in the Egelhoff decision was that because that statute governed the payment of benefits, it had to be preempted by ERISA because the payment of benefits is a central matter of plan administration. And in this case, what the WFMLA substitution provision does is exactly that. The substitution provision, when it's applied to the short-term disability benefits, requires payment of the ERISA benefit. And so that's a central matter of plan administration that must be preempted under the express preemption. So under your argument, can any time someone wants to get out from under any regulatory authority of the state, they simply administer their employee benefits through an ERISA plan and they are effectively without governance by the state? Is that your position? No, I don't think that that accurately summarizes my position. I think that ERISA provides a limited scope of benefits that may be classified as ERISA benefits. Employee welfare benefit plans include those that are maintained to provide benefits in the event of sickness, accident, disability, death. Oh, yeah. You've got to concede the definitions of employee benefit plans under ERISA are about as broad as they come. Well, I think that that was Congress's intent, to create those broad definitions. And I think that as it relates to this case, one of the things that's important to remember, and this is probably not something that appears in either of the briefs, but it's certainly in the record before the court, that this is an employee benefit plan that's funded through a trust. And ERISA's, you know, one of ERISA's hallmark purposes is to protect assets that are held in trust to pay employee benefits. And so when Nationwide, as a plan sponsor, establishes an employee benefit plan and funds these short-term disability benefits through a trust, any sort of state action that impinges upon those benefits paid through the trust absolutely oversteps the bounds that have been set to establish ERISA preemption. And the reason it's so important, or one of the reasons it's so important to have this uniform administration of benefits, is because those assets that Nationwide and its affiliated companies place in trust to pay these benefits are not placed there solely for the benefit of the 200 or so employees in the state of Wisconsin. All of Nationwide's 30,000 employees in 49 states are— But I guess my concern is kind of this overarching issue that we began with, is how is it that state regulation in traditional areas remains viable or not in relationship to ERISA? And I guess what I see governing that is the impairment provision. I look at ERISA and I see there is a broad superseding 514A. I don't think anyone would agree with you. The Supreme Court has probably said we've seen about all of it. We can stand because everything keeps coming through to us. But on equal footing with that is 514D. And it makes clear that nothing would be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States. So I would like you to explain to me why, under Shaw, which is really about the authority. There's not much else that strictly looks to the impairment analysis. And it seems to me that Shaw says when you want to know if another federal law is being impaired, then what you have to do is you have to look at the package of congressional intent. I think the instruction is clear there. The package would include every word in the statute and the congressional intent in creating that statute. And I'm just struggling with why impairment is not clear here when the Title IV provisions which we're talking about, the superseding in 2651, is immediately coupled and followed with 6252, effect on existing employer benefits, 6253, encouragement of more generous leave policies. And that's kind of the tip of the iceberg. The Act creates a commission to look at how other benefits are being used and created in other states. It defines employee benefits in a way that would cover so many of the historical things that were discussed in the creation of the Family and Medical Leave Act. Help me understand why you think the impairment provision doesn't govern this case. Okay. I've got a lot of ground to cover, but let me get through that. It's a big question. I'd agree with you. So I think that counsel for the appellants identified this Oki case just recently that addressed 1144D's non-impairment language. And what I found in going back and looking at that and taking another look at Shaw v. Delta Airlines is that the Supreme Court in Shaw v. Delta Airlines, I believe, very clearly states that Section 1144D must be construed narrowly with respect to the potential savings of state law. And when the D.C. Circuit looked again at 1144D's non-impairment language, they were looking at non-impairment in the context of the Federal Railway Labor Act directly. So they were not involved in a two-step savings analysis, which I think is absolutely necessary under the impairment provision. You've got to look at state law. You've got to look first at 1144D, and then you've got to jump over to the FMLA savings provision and determine whether the FMLA savings provision or the purposes of the FMLA might provide any basis for this impairment view. But we're all in agreement that this is not what they call the simplistic double savings clause argument. You understand that's not what's being made. What's being made here, as I understand it, is that you have an act that says look to the intention of the Federal Act. What is being not impaired under ERISA is the Federal Act. You cannot impair the Federal Act. So what we do is we turn away from ERISA, now that we have the instructions, and we look at the FMLA and we say, what is it that we may not impair? And that's where we go to the FMLA and we say, what is the intent of the FMLA? What may we not impair through our use of ERISA? And that's where you're saying, what does the FMLA, the FMLA, not the WFMLA, say? Well, it says I'm interested in state laws. You will not, the FMLA itself is a floor above which the expectation is state laws will provide what they need. This is not a Shaw neutral question, is it? This is a question that I think clearly, you know, I think even in the legislative history, it specifically says state family medical leave laws are not preempted by ERISA or any other Federal law. So are we on the same page? Are we working through the same conceptual argument? Well, first off, you suggested that this wasn't the simplistic double savings. I'm not so sure that I understand that your view of it is. You disagree with that? I may disagree with that. But I think it's more important for me to address the issues of FMLA's Federal savings. Nothing in this Act, and it says this Act four times, FMLA's Federal savings, so 29 U.S.C. 2651B, is very clear that what is being saved from preemption by the Federal FMLA, it's nothing in the Federal FMLA itself that can preempt the state laws. There's nothing in the Federal FMLA that suggests that ERISA does not preempt these laws that would act on employee benefit plans regulated by ERISA. I think that if we're going to look at FMLA's purpose, the plain text of the statute is sufficient to identify the purpose of the FMLA. And we look at 29 U.S.C. 2601, where it says that the purpose of this Act is to entitle employees to take reasonable leave for covered reasons in a manner that accommodates the legitimate interests of employers. And because the stated purpose of the Federal FMLA is to accommodate the legitimate interests of employers, we can't go down a path of arguing or suggesting that the maximum benefits are always what the Federal FMLA is encouraging. In fact, what the FMLA talks about with respect to these leave rights tends to be focused on a term that is accrued paid leave, which is something that the Federal DOL has consistently excluded and separated from the concept of short-term disability benefits. And so when we talk about accrued paid leave for the purposes of Federal law, which is what matters with the FMLA, and additional leave rights, it's clear that they are not talking about the same thing as our short-term disability benefits in this case. There is a finding of fact in this case that the short-term disability benefits are not a form of leave. The short-term disability benefits are an income replacement benefit. The leave is provided by the employer nationwide. The income replacement is provided by the benefit plan administered through a trust by the Benefits Administrative Committee at Nationwide. And so there is a separation there. I think it's also very important to recognize, because this is distinct from what my arguments have been on behalf of the company, both below and in this court, because we don't believe that Nationwide's short-term disability benefits are leave rights. And so we believe that they're excluded. And that's an unresolved question. But the thing is that— I can agree on that. Yes. So if the panel is taking the position that these short-term disability benefits should be considered to be a type of leave right, and that's the only way you get to a consideration of 29 U.S.C. 2652B. 2652B is the part that says that collective bargaining agreements and employee benefit programs or plans can't diminish the rights created by the federal FMLA. If you assume that our short-term disability benefits are within this universe of family and medical leave rights, which is something we disagree with, but if you assume that, then you've got to go back and you've got to look at 2652A, which provides that nothing in this Act, so nothing in the federal FMLA or any amendment made by the federal FMLA, shall be construed to diminish the obligation of any employer to comply with any collective bargaining agreement or any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established under this Act. And so if you're going to make the jump and you're going to say that these short-term disability benefits are something that fall within the scope of greater family and medical leave rights, then there's nothing in the federal FMLA can't be used to take away or to cause the benefits provided by this short-term disability plan, which are paid benefits, benefits that the federal FMLA doesn't provide. You can't use the federal FMLA to modify those short-term disability benefits because it is a voluntary benefit that is offered by the employers. And one of the purposes of ERISA is to allow employers to offer benefits that they are not mandated. They're not required to provide these benefits. And if you, as a public policy matter, allow states to come in and pick and pick and mandate that employee benefits that are voluntarily provided be administered with respect, be administered under state law requirements, then just as the administrative law judge found in this case, Nationwide has the option of ceasing to offer the benefits. It's very important to understand that the Wisconsin FMLA does not mandate that any paid leave benefits be provided. The only way that the WFMLA provides paid benefits is by directly acting upon benefits that an employer voluntarily provides. And so what is created is not additional leave rights. What is created is an attachment on a voluntary benefit that Nationwide is already providing to its employees. Can I ask one rifle shot question? Sure. Are you aware, Mr. Cirsic, of any federal circuit court case, any Supreme Court case? I'm aware of the Aurora decision. Any case where a state law that required payments of benefits contrary to the terms of a plan was held not preempted by ERISA? I am not aware of any such case. I think that the Supreme Court case in Greater Washington Board of Trade, which was the workers' comp statute in the District of Columbia that purported to require health benefits to be provided during the duration of a workers' compensation leave of absence, or so long as workers' compensation benefits were provided, is kind of the guiding principle that attempts by the states to mandate that employee benefit plans continue providing benefits contrary to their terms would be preempted. Mr. Moriarity, in his brief, candidly, and I credit him for this, on page 13, admits that the Giram order, quote, created a conflict for BAC, the plan administrator, about whether to follow Wisconsin law or federal law. I'm not aware of any case ever where a court, a federal circuit court, Supreme Court, has ever said that circumstance does not give rise to ERISA preemption. And so I wanted to see if you, you know, and I also wanted to ask it early so that Mr. Moriarity would have a chance to answer that. Okay. Thank you. Thank you. Thank you, Mr. Sursik. Mr. Moriarity, you have your rebuttal. Your Honor, the issue here with that question is we have ERISA preemption applied, as we've indicated, except we've got congressional intent. So, yeah, there's a potential conflict here. Right. Oh, I understand your argument. But it is a matter of to reach the result that the district court got to, we have to have congressional intent. And we have a presumption against preemption. And I think we need to look at the way we look at these statutes. You're absolutely correct that when a federal court is looking at a specific congressional statute in a phrase, it's supposed to first look at the phrase and say, okay, is there an ambiguity? That's just interpreting that provision. Right. And if there isn't, that's the end of the story. The court has told us many times. I understand that. But here we have the impairment provision. And the impairment provision sets up an entirely different scenario. Then you must look at, okay, what did Congress intend? And we have to do it in the context of a presumption against preemption. But that didn't slow the court down for a second in Egelhoff. I mean, not for a second. I mean, I look at ‑‑ I'll be candid with you. Tell me how this language doesn't apply. The administrators must pay benefits to the beneficiaries chosen by state law rather than those identified in planned documents. True, right, in this case? Right. Claims against an administrator. Okay. Which is important because only claims were made against an employer. Okay. But I just ‑‑ I'm just going to ‑‑ I just want to know if this language applies. And then, I mean, I'll let you distinguish it. The statute thus implicates an area of core ERISA concern. In particular, it runs counter to ERISA's commands that a plan shall specify the basis on which payments are made to and from the plan. The fiduciary shall administer the plan in accordance with the documents and instruments governing the plan. Okay. I mean, all those things seem to be true. That's Egelhoff. However, Dillingham and Travelers are far better to look at because there you have Dillingham saying, you know what? Congress, even before ERISA, sought to encourage this particular state statute. It was silent when it enacted ERISA. But we're drawing just from that silence that ERISA preemption doesn't apply. What about ERISA's? I mean, if we're going to get into purposes in legislative history, why not ‑‑ why doesn't all the ERISA legislative history and ERISA purposes, I mean, ERISA has purposes of its own, which, you know, one could argue are thwarted by having plan administrators pay benefits contrary to the terms of the plan. Actually, in Dillingham, all of that was taken into account. The ERISA legislative history was looked at, and that, looking at the ERISA legislative history, the Dillingham court said no ERISA preemption because, before ERISA, they intended to encourage this state law. In Travelers, they looked at the statute the Congress intended to encourage and rely on state experimentation. Almost the same words you see in the report, and guess what? They were citing a House report for evidence. In Travelers. In Travelers. I worked in the Senate, and they'd come in with these preprinted colloquies, and you can always tell when they're fake because they're so stilted. I would like to ask the senator from Vermont. Is it the senator's intention that under section 1222A1A that we can export washing machines to the Republic of Thailand? And it's like, yes, sir, you are correct. Your Honor, in my role as an assistant attorney general, I am frequently before court saying we must assume the legislature always acts rationally, and I also work with the legislature. It's hard these days. One final point quickly, and that is this state law doesn't mention ERISA. At all. Not at all. All right. Thank you, Mr. Moriarty. We appreciate your arguments, and yours as well, Mr. Smith. Appreciate you coming to our court. Thank you. Thank you very much. The case will be submitted.